IN THE MATTER OF THE TRUST UNDER ARTICLE
ELEVENTH OF THE LAST WILL AND TESTAMENT OF
BERNARD R. ARMOUR, DECEASED, FOR THE BENEFIT
OF THE ISSUE OF RACHEL ARMOUR DOYLE, FOR-
MERLY RACHEL ARMOUR.

Superior Court of New Jersey
Chancery Division

Decided August 4, 1976.

*Mr. Elmer J. Bennett,* for the trustees and the Executors (*Messrs. Carpenter, Bennett & Morrissey,* attorneys).

*Mr. Allan H. Klinger,* guardian *ad litem.* (*Messrs. Jones, Cuccio & Klinger,* attorneys).

*Mr. Joseph Dunn,* for income beneficiaries Ruth Armour Kamen and Toby Armour Schneider (*Messrs. Cummins, Dunn, Horowitz & Pashman,* attorneys).

*Ms. Margaret M. Hayden and Mr. Marshall Perlin* (of the New York Bar), for Joshua Klein. (*Messrs. Ball, Hayden, Livingston & Nelson,* attorneys).

GELMAN, J. S. C. Bernard R. Armour executed his last will and testament in 1944. By its provisions, which became effective upon his death in 1949, a trust consisting of one-third of his residuary estate was established for the benefit of his daughter Rachel Armour. The trustees were directed to accumulate the trust income and apply so much of the net income as, in their discretion, was needed for Rachel's education, support, and maintenance until Rachel attained the age of 21. At that time the trustees were to pay over

to Rachel the accumulated, undistributed income and thereafter, for her life, all future income. The will further provided that at Rachel's death the trust was to terminate and the principal was to be paid to Rachel's lawful issue then surviving, in equal shares *per stirpes*.

Rachel died in 1968, survived by her two minor children, Joshua Klein and Leah Doyle. Article Eleventh of the will provided that should any sum, whether income or principal, become payable,

* * * to a person who at the time shall be a minor, the trustees shall pay to such person or apply to his or her use only such sum as the trustees shall, in their discretion, deem proper for his or her support, maintenance and education, and shall accumulate for the benefit of such minor any surplus income remaining after such payment or application. All income so accumulated shall be paid over to such person upon his or her attaining the age of twenty-one (21) years; but if such person shall die before attaining the age of twenty-one (21) years then such accumulations of income shall thereupon be paid over to those persons who in that event take the principal of the fund, the income from which had been so accumulated, and in the same shares, interests and proportions.

Leah Doyle is presently 15; Joshua Klein became 18 on July 4, 1976. Since he is no longer a minor under *N. J. S. A.* 9:17B–3,[1] Joshua construes the will as entitling him to immediate payment of all of the accumulated trust income. It is his contention that the testator used the term "minor" to refer to the legal status of the beneficiaries rather than as a synonym for the then prevailing age of majority, 21. The trustees are in doubt as to the construction claimed by Joshua and have requested this court to

[1] *N. J. S. A.* 9:17B–3 provides in pertinent part:
"Except * * * with respect to the provisions of the 'New Jersey Uniform Gifts to Minors Act:' (*P. L.* 1963, *c.* 177, C. 46:38–13 *et seq.*), every person 18 or more years of age shall in all other matters and for all other purposes be deemed to be an adult and, notwithstanding any other provision of law to the contrary, shall have the same legal capacity to act and the same powers and obligations as a person 21 or more years of age."

construe the will and to advise them as to their rights and duties.

██ Of course, the intention of the testator is the controlling consideration, and to discern that intent we must look to the language of the instrument itself, as well as the relevant circumstances and law in existence when the will was executed. *Watson v. Brower,* 24 *N. J.* 210, 215 (1957); *In re Wehrhane,* 23 *N. J.* 205, 210 (1957); *In re Armour,* 11 *N. J.* 257, 269–270 (1953). Paragraph Eleventh is a typical form of trust frequently utilized in wills and inter vivos trusts to avoid the distribution of trust funds to remaindermen who have not attained their majority. The only unusual feature of this trust — which gives rise to the claimed ambiguity — is that the testator used different expressions to define the date of termination. The prefatory language directs the trustees to accumulate and apply trust income for the benefit of any person "who at the time shall be a minor," and the second sentence directs that the distribution of income shall occur as each beneficiary attains the age of 21. At the time the will was executed 21 was the age at which minority terminated, and there is nothing in the language of the instrument to indicate an intent on the part of the testator to make the time of distribution of trust assets to his grandchildren dependent upon future legislation. From the context in which it appears, it is evident that the testator used the term "minor" not to denote a mutable legal status, but to signify the specific time at which he wished distribution to occur, *i. e.,* age 21.[2]

There is support in the case law of New Jersey for this conclusion. In *Quick's v. Ex'r v. Quick,* 21 *N. J. Eq.* 13 (Ch. 1870), the property was to pass to the life tenant's heirs "to be divided among them as the law directs in case of

---

[2]The fact that the testator directed his trustees to apply accumulated income for the "education" of his grandchildren during their minority further manifests an intent to postpone distribution until the age of 21, which is the usual age of college graduation.

dying intestate." In 1808, when the will was executed, the act of 1780 regulated descent and distribution in New Jersey. This statute abolished the English law of primogeniture and the exclusion of female descendants, and gave to each female, in the same degree from the ancestor, one share to two shares for each male descendant. This remained the law until 1816 when the statute was changed to allow males and females to inherit equally. The court in *Quick* held that the controlling law was the statute applicable at the time of the making of the will, and not the statute in effect at the death of the life tenant. Reasoning that there was a strong inclination among freeholders of the State towards some preference for male over female heirs, and that the law, as it existed in 1808, was well known to the testator, the court concluded that he had intended to adopt the division of two shares to a male and one to a female as the mode of dividing his property among his grandchildren.

In reaching this result the court distinguished the case of *Kennedy v. Kennedy,* 29 *N. J. L.* 185 (Sup. Ct. 1861), in which the devise was to the testator's son for life and after his death to his heirs "as the law *may* direct" (emphasis supplied), since this language indicated an intent that the heirs should take according to the laws of inheritance in effect at the termination of the life estate.

The reported decisions under *N. J. S. A.* 9:17B–3 suggest nothing which would lead us to reject the testator's intent. These cases involve the determination of legislative intent in statutorily reducing the age of majority. For example, in *N. J. State P.B.A. v. Morristown,* 65 *N. J.* 160 (1974), the Supreme Court held that the Legislature intended *N. J. S. A.* 9:17B–3 to supersede the statute prohibiting employment of persons under 21 years of age as policemen. And in *In re Morgan,* 122 *N. J. Super.* 117 (1973) the County Court held that there was no valid reason why the surrogate should have to administer infants' settlement proceeds being held in trust for individuals who had already attained the age of 18.

We are not concerned here with the intent of the Legislature but rather the testator's intent — which was to postpone distribution until the beneficiaries had attained the age of 21. There is nothing in the statute reducing the age of majority to suggest that the Legislature intended to disturb private gift transactions. To the contrary, *N. J. S. A.* 9:17B-3 is expressly inapplicable to the provisions of the New Jersey Uniform Gifts to Minors Act. That act defines "minor" as a person under 21 years of age, *N. J. S. A.* 46:38-14(k), and empowers a custodian to

* * * pay over to the minor for expenditure by him, or expend on behalf of the minor, so much of or all the custodial property as the custodian deems advisable for the support, maintenance, education, general use and benefit of the minor in the manner, at the time or times, and to the extent that the custodian in his absolute discretion deems suitable and proper * * *. [*N. J. S. A.* 46:38-27(b)]

This language is similar to the provisions of Bernard R. Armour's will. The legislative exception for gifts made to minors under the act strongly suggests that we should not judicially accelerate the time for distribution under donative trusts established long prior to the statutory reduction of the age of majority.